## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**TABITHA PARKER,**
**individually and on behalf**
**of all others similarly situated,**

    **Plaintiff,**

v.                                    **CASE NO.: 8:22-cv-1988-MSS-TGW**

**IRBSEARCH, LLC,**

    **Defendant.**
_____/

## <u>FIRST AMENDED CLASS ACTION COMPLAINT</u>

Pursuant to Fed.R.Civ.P. 15(a)(1)(A) and the Court's Order dated September 28, 2022 (*see* Doc. 17), Named Plaintiff, Tabitha Parker, individually and on behalf of all other similarly situated individuals, files this First Amended Class Action Complaint and alleges the following individual and class claims against IRBsearch, LLC ("Defendant" or "IRB"):

## PRELIMINARY STATEMENT

1.      Plaintiff brings this action against Defendant for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681a–x, which imposes several important requirements on consumer reporting agencies ("CRAs"), such as the Defendant, that sell employment-related consumer reports (even if Defendant denies what it sells actually constitutes a "consumer report").

2.      The Named Plaintiff was denied employment opportunities because of Defendant's actions described herein, resulting in a lost job, lost pay, and lost benefits.

3.      Defendant is a company that used automated processes to webscrape criminal histories from court websites, or purchased such records in bulk, and assign them to specific consumers – largely based on name alone.  It sold these records to its various customers, including one that issued a report to Plaintiff's former employer.

4.      Ultimately, Plaintiff lost a job opportunity because of a background check generated by Defendant, and because Defendant has unilaterally (and illegally) decided the reports it sells do not qualify as "consumer reports."  Thus, neither Plaintiff nor the putative class members were provided with any of the rights afforded them under the FCRA, not the least of which are the notification requirements mandated by 15 U.S.C. § 1681k(a)(1), where a consumer reporting agency ("CRA") like Defendant must notify consumers when it furnishes derogatory information to be used as part of an employer's hiring process.

5.      Regardless of the context, anyone that, like Defendant, issues consumer reports must adhere to the FCRA's foundational mandate of having in place reasonable procedures to ensure the maximum possible accuracy of the information they report.

6. The FCRA also includes multiple provisions aimed at providing consumers with transparency regarding when information is reported about them, and the substance of that information.

7. Here Plaintiff alleges that Defendant violated the FCRA in several ways.

8. First, because it claims not to be governed by the FCRA, when the Plaintiff requested a copy of her full file from Defendant, the Defendant failed to provide all of the information in its file about each requesting consumer (commonly known as a file disclosure), as well as the sources of that information, and to whom Defendant gave any information about Plaintiff.

9. Because it claims not to be governed by the FCRA, when the Plaintiff requested a copy of her full file from Defendant, Defendant failed to provide all of the information reported about each requesting consumer (commonly known as a file disclosure).

10. As a result, Defendant violated 15 U.S.C. § 1681g(a), which requires that a CRA provide not only "all information", but also "the sources of the information" in the consumer's file, and comprehensive list of everyone, including end-users, to whom the CRA has provided a report about the consumer. 15 U.S.C. § 1681g(a)(1)–(3). *See* Count I (class claim).

11. Second, Defendant also violated 15 U.S.C. § 1681k by furnishing consumer reports containing public information likely to have an adverse effect on

a consumer's ability to obtain employment but failing to provide at the time notification to the consumer that such information was being reported and to whom it was being reported. *See* Count II (class claim).

12.    Third, Defendant violates the prohibition on publishing obsolete information in violation of 15 U.S.C. § 1681c(a)(2), including as to the report generated on Plaintiff. *See* Count III (class claim).

13.    Finally, Defendant failed to follow reasonable procedures required under the FCRA to ensure "maximum possible accuracy" of the information it reported about Plaintiff. 15 U.S.C. § 1681e(b).  *See* Count IV (individual claim).

14.    Alternatively, to the extent Defendant is somehow not covered by the FCRA, Defendant defamed Plaintiff to her potential employer under Florida common law. Defendant communicated to Plaintiff's prospective employer that Plaintiff was a thief, and those statements were false.

15.    Branding Plaintiff a thief caused the employer to reject Plaintiff's job application, causing her monetary and emotional harm.

## PARTIES

16.    Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a.

17.    Defendant is a limited-liability company with its principal place of business in Tallahassee, Florida, and doing business in this District.

18.     Defendant is a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f), that compiles, sells, furnishes, and uses consumer reports and services in the Southern District of Florida, and throughout the United States.

19.     Defendant obtains consumer information bearing on consumers' character, general reputation, personal characteristics and mode of living from a myriad of publicly available sources such as criminal and traffic records, social security number information, sex offender registries,  etc.

20.     After acquiring consumer information from its sources, Defendant regularly assembles that information into a report, which it then sells to third parties.  In this case, Defendant sold information to Osa Consulting, which was hired by Plaintiff's former employer to do a background check on her relating to her employment.

21.     The employer in turn used the report that contained the information from Defendant for an employment purpose (to fire Plaintiff).

22.     Defendant sells such consumer reports to customers throughout the country, using facilities of interstate commerce to transmit such reports, including but not limited to electronic transmission.

## JURISDICTION AND VENUE

23.     This is an action for damages in excess of $30,000.00, exclusive of interest, fees, and costs.

24.     The Court has jurisdiction under the FCRA, 15 U.S.C. §§ 1681n and 1681p.

25.     Venue is proper in Hillsborough County because the events giving rise to this lawsuit occurred here. Plaintiff applied to work for an employer in Hillsborough County, Florida, Defendant provided a consumer report on Plaintiff to an employer in Hillsborough County, Florida, and Defendant operates a business within this County.

26.     Defendant will suffer no unfair prejudice from the exercise of this Court's personal jurisdiction, which serves the interests of justice in this case.

## FACTS

### A.     Defendant is a Consumer Reporting Agency

27.     Despite the fact that Defendant is a consumer reporting agency and sells consumer reports as defined by the FCRA, it attempts to avoid its obligations under the FCRA by disclaiming FCRA governance in its marketing materials and contracts with third parties.

28.     Despite its statements to the contrary, Defendant specifically markets itself as a company that provides information and services that are governed by the FCRA.

29.     For example, one of the services Defendant provides is known as "RetrievALL".  According to its website, "[w]ith RetrievALL the courthouse comes to you! RetrievALL provides you with the state, local, and federal court information

you need to make decisions efficiently and confidently. RetrievALL delivers local expertise and nationwide reach, reducing travel expenses and adding a layer of knowledge to your research efforts."[1]

30.    Also according to its website, Defendant's customers can "[g]et all your information in an easy-to-read report. With our data collection tools, three comprehensive reports including person, address, and business, make up a 360-degree background profile. Reports include: Address Report, Asset Report, Bankruptcy Report, Business Report, Comprehensive Report, Comprehensive Report with Real-Time MV, Contact Card Report, Criminal Report, Florida Accident Report (NEW), Lien & Judgment Report, Locate Report, Neighbor Report, Motor Vehicle Report, [and a] Relative Report."[2]

31.    But, in a transparent effort to avoid liability for failure to comply with the FCRA, Defendant also includes FCRA-related disclaimers on its website.[3]

32.    Further, because Defendant provides information to companies like Osa, which then use the consumer reports for an employment purpose, Defendant has consented to the FCRA's governance of its activities.

---

[1] https://irbsearch.com/searches.html
[2] *Id.*
[3] For example, currently Defendant includes the following disclaimer on its website:

> IRBsearch's services are not provided by a consumer reporting agency and does not constitute a consumer report as these terms are defined by the Fair Credit Reporting Act. 15 U.S.C Section 1651 et seq ("FCRA"). The IRBsearch services may not be used in whole or in part as a factor in establishing an individual's credit worthiness or eligibility for credit or insurance or employment not for any other purpose under the FCRA.

33.     Defendant failed to take reasonable steps to investigate Osa to ensure that it was a bona fide business entity operating on its own and in compliance with the FCRA, had an appropriate permissible purpose for accessing FCRA information, and would access FCRA information only for a permissible purpose.

34.     More specifically, Defendant knew or should have known that the information it sells to customers like Osa will end up in consumer reports that are used for an employment purpose as that term is defined by the FCRA and are, therefore, governed by the Act.  In fact, Osa's website readily discloses that it does employee background checks as one of its three core services offered to companies.[4]

35.     Had Defendant maintained a reasonable audit program designed to monitor the usage of customers to reasonably prevent and detect unauthorized use of its information, Defendant would have also realized that Osa was buying its reports, repackaging them, and selling them for use by employers when conducting applicant and employee background checks.  But Defendant failed to do so here.

36.     Not only that, Defendant has been accused of violating consumer privacy laws in the past.  Thus, it knows, or should have known, the information it sells is misused.

37.     For example, in *Ostella, et al. v. IRBSearch, LLC*, N.D. Fla. Case No.: e 4:14-cv-00416-WS-CAS, the same Defendant named in this case, IRBSearch,

_____

[4] *See* https://osaconsultinggroup.com/services, last accessed Oct. 6, 2022.

LLC, was sued in the Northern District of Florida for improperly obtaining and disclosing personal information from consumer motor vehicle records in violation of the Driver's Privacy Protection Act.  And while Defendant ultimately prevailed at summary judgment in the *Liberi* case for reasons inapplicable to this case, the *Liberi* case undoubtedly put Defendant on notice that its reports are subject to abuse, as was the case here.

38.    Moreover, discovery will show that Defendant knew Osa was obtaining information to be used for an FCRA-governed purpose. Discovery will confirm that the person ordering the report for Osa used identifying information tying that person to Osa, so Defendant knew it was selling information to someone who intended to use it for an FCRA purpose.

39.    Defendant is therefore aware that information it sells is used for purposes governed by statutes like the FCRA, yet it knowingly sells such information to FCRA-governed entities and for FCRA-governed purposes and simply pretends it can hide that knowledge and protect itself with a few disclaimers.

40.    To be sure, the FCRA imposes several obligations upon Defendant which are not only well-established, but they are easy to follow.  It is clear from the Defendant's website—it knows about the FCRA and has chosen not to abide by its strictures despite collecting and selling information that falls under the Act's provisions.

41.   Despite marketing its solutions as including public records such as criminal history, among many other things, Defendant disclaims that the information in the reports that it markets and sells for FCRA purposes can be used for such purposes.

42.   Defendant is aware of the entire text of the FCRA and its legislative history, as well as the regulatory oversight by the Federal Trade Commission.

43.   Defendant accesses large databases of public records and related employment histories as a nationwide CRA. It accesses and compiles databases to prepare and furnish consumer reports for employment and other FCRA purposes.

44.   Plaintiff's former employer fired Plaintiff and other putative class members based in whole or in part on the contents of the consumer reports Defendant sold about them.

45.   Discovery will show that other employers did the same based upon information provided by Defendant in the employment context.

46.   Defendant does not supply any notice to consumers about whom it has sold a report containing adverse employment information to a third party, such as the criminal records in the cases of Plaintiff (nor any of the putative class members).

47.   Providing notice that it has supplied a consumer report containing negative criminal background information at the time it supplies such a report to the third-party CRA or employer arms the nation's millions of job applicants with

the knowledge and information needed to challenge inaccurate, incomplete, and misleading public-records-based consumer reports. The FCRA is designed to permit individuals whose reports are inaccurate with ample time to identify the inaccuracies and correct them before the employer has made an employment decision.

48.    Or, even if the report is entirely accurate, consumers still have the right to know that Defendant is supplying information about them that may negatively impact their job prospects. This notice permits consumers the opportunity to discuss potentially negative information preemptively with employers, so they may blunt the impact of such information.

49.    Defendant likewise does not maintain any procedure by which it ensures that the information it reports to its customers is complete or up-to-date. *See* 15 U.S.C. § 1681k(a)(2). Defendant therefore cannot rely on this option for complying with 15 U.S.C. § 1681k(a).

**B.    Facts Regarding Plaintiff**

50.    Plaintiff was a victim of an inaccurate consumer report sold by Defendant and eventually to her former employer, Stellar Partners, who purposed the Plaintiff's consumer report and subsequently used it for an employment purpose when firing Plaintiff.

51.    Plaintiff was terminated from her job at Stellar Partners because Stellar Partners relied on the inaccurate and derogatory consumer report about

her. Defendant obtained and sold a significant portion of the data that was included in that report.

52.   More specifically, Plaintiff applied to work for Stellar Partners in August of 2019. Stellar Partners is one of the largest airport retail operators in the United States, with more than thirty-eight locations across ten U.S. airports in fourteen states.

53.   As part of its hiring processes, Stellar and its subsidiaries use background checks to make employment decisions. Because such employment decisions are based in whole or in part on the contents of the background checks, all parties involved with the sale and use of the consumer report on Plaintiff were obligated to adhere to certain requirements of the FCRA.

54.   Stellar originally hired Osa Consulting Group, LLC, in August of 2019 to perform a pre-employment background check on Plaintiff, the reporting of which information is subject to the FCRA's strictures. The FCRA imposes several important accuracy and transparency requirements on consumer reporting agencies ("CRAs") like Osa, which are designed to protect consumers like Plaintiff.

55.   Such protections also apply to Defendant in its role as a CRA. Discovery will confirm that Defendant supplied information to Osa, which Osa then repackaged and furnished to Stellar as part of Stellar's background-check process for applicants like Plaintiff.

56.     Additionally, because Defendant misrepresented to Osa that: (1) it was not a consumer reporting agency; and, (2) that the background check on Plaintiff which Osa had purchased from Defendant was not a consumer report, and Osa then repacked and sold that report to Stellar who, in turn, failed to provide Plaintiff with the requisite pre-adverse and adverse action notices required by the FCRA under 15 U.S.C. § 1681b(b)(3).

57.     Osa bought a consumer report from Defendant, which contained information Osa included in its own report to Plaintiff's potential employer in approximately August of 2019. A redacted copy of the report Defendant furnished on Plaintiff is attached as Exhibit A.

58.     At the time it sold information purporting to be about Plaintiff to Osa, Defendant knew or had reason to know that Osa would use the information for an FCRA-governed purpose—employment.

59.     That report contained the erroneous criminal record supplied first in a consumer report compiled by Defendant.  In fact, many of the entries in the report, including allegations of theft, simply do not belong to Plaintiff.

60.     By way of example, the report states that on August 11, 2007, Ms. Parker was charged with a "Misdemeanor for Retail Theft," found guilty, and sentenced to 15 days in the county jail. But Plaintiff has never been arrested for theft, never been convicted of a crime, nor has she ever been to jail.

61.    Worse still, the report erroneously alleges Plaintiff was charged with the second-degree felony for aggravated battery on a pregnant female in Hillsborough County, Florida, and even includes a mugshot. But Plaintiff has never been charged with a felony ***and the photograph in the mugshot is not Plaintiff***, but another person entirely.

62.    The report is full of similar errors wrongly attributing to Plaintiff crimes she simply did not commit, including an additional felony charge for passing altered or forged instruments and larceny, an erroneous charge for misdemeanor larceny, and another misdemeanor charge for allegedly violating a pre-trial release. Simply put, these criminal charges belonged to someone else and they were costing Plaintiff her job with Stellar.

63.    As a result of the erroneous consumer report sold to Osa by Defendant, Plaintiff was left jobless and humiliated.

64.    Because of Defendant's actions, Plaintiff lost her job and lost her salary.  She also lost health benefits.

65.    Plaintiff was unaware that the consumer report Osa repackaged and sold to Stellar in August of 2019 was actually an idiCore report generated by Defendant and then sold to Osa.  It was not until after she sued Osa and Stellar in another lawsuit that she learned the consumer report was originally purchased from Defendant.

66.     More specifically, it was not until February 4, 2021, after she sued Osa and Stellar, that Plaintiff first received a copy of the consumer report generated by Defendant that was then sold to Osa, repackaged, and sold to Stellar who then used it to fire/not hire Plaintiff. Previously, the copy of the report provided to Plaintiff had been repackaged by Osa and sold to Stellar as an Osa "Comprehensive Report."

67.     Plaintiff could not have discovered that Defendant sold a report about her to Osa any sooner, owing in large part to Defendant's failure to abide by the FCRA's requirement that it notify her when it was reporting to Osa negative information about her in the employment context.

68.     Defendant's deceit therefore worked, as it was able to keep itself secret until Plaintiff sued Osa and Stellar and then, through discovery in litigation, learned Defendant's identity.

69.     Hoping to get to the bottom of the inaccuracies in the report, Plaintiff wrote to Defendant and asked for her Section 1681g file disclosure on or about April 25, 2022.  On May 18, 2022, Defendant refused to comply with 1681g, instead responding as follows:

> We are in receipt of your request to dispute and correct information that was provided on a Comprehensive Report to Osa Consulting Group, LLC on August 19, 2019.  IRBsearch obtains its information from third-party sources, which may or may not be thorough or completely accurate.  Source data is sometimes reported or entered inaccurately, processed poorly, and is generally not free from defect.  IRBsearch Services are not the source of data, nor are they a comprehensive compilation of the data.  For this reason, we are unable

> to comply with your request because IRBsearch's services are not provided by "consumer reporting agencies", as that term is defined in the Fair Credit Reporting Act, (15 U.S.C. § 1681 et seq.), (the "FCRA"), and do not constitute "consumer reports" as that term is defined in the FCRA.

70.    Notably, in addition to failing to provide all the information it possesses about consumers like Plaintiff, Defendant also failed to disclose any sources of information it possessed about Plaintiff, and it did not provide a list of recipients of information, including, for example, Osa.

71.    Plaintiff asserts a nationwide class claims against Defendant under 15 U.S.C. § 1681g, because Plaintiff requested her full file disclosure from Defendant, and Defendant failed to provide the information required by 15 U.S.C. § 1681g.

72.    Plaintiff also asserts a nationwide class claims against Defendant under 15 U.S.C. § 1681k(a), because it provided Osa with a consumer report containing inaccurate criminal information likely to adversely affect Plaintiff's ability to obtain employment without providing Plaintiff with notice at the time it provided the report to Osa.

73.    Defendant likewise has in place no strict procedures designed to ensure public-record information it reported was complete and up-to-date, so it cannot rely on the procedures requirement of Section 1681k(a)(2) as the means to comply with Section 1681k.

74.    Additionally, Plaintiff asserts a nationwide class claims against Defendant under 15 U.S.C. § 1681c(a)(2).    Defendant regularly violates the

prohibition on publishing obsolete information in violation of 15 U.S.C. § 1681c(a)(2), including as to the report generated on Plaintiff.

75.     Plaintiff also brings an individual claim under 15 U.S.C. § 1681e(b) against Defendant because of inaccuracies contained in her consumer report.

76.     Plaintiff alleges Defendant does not have in place reasonable procedures designed to assure the maximum possible accuracy of the information it reports.

77.     Among other things, the FCRA regulates the collection, maintenance, and disclosure of consumer credit report information by CRAs, including public record information like criminal history.

78.     Additionally, the FCRA mandates conditions, procedures, and limitations on the use of consumer reports for employment purposes by CRAs, prospective employers, and other individuals.

79.     The FCRA mandates that a report user, before taking any adverse action based in whole or in part on a consumer report, must provide to the consumer a copy of the applicant's report and a summary of the applicant's rights under the FCRA.

80.     Defendant has an independent obligation to comply with the FCRA.

81.     Defendant's violations of the FCRA have been willful, wanton, and reckless in that it knew, or should have known, that it was failing to comply with the requirements of the FCRA.

82.     Defendant willfully disregards its duties under the FCRA, which exacts serious consequences on job applicants and interstate commerce. The natural result of Defendant's failures to abide by the conditions, procedures and limitations of the FCRA prejudices consumers' ability to challenge information contained in consumer reports it sells to third parties.

83.     Defendant does not provide notification to consumers that it furnished an employment-purposed consumer report containing a criminal record likely to adversely affect employment *at the time* it provides the report to third parties.

84.     Defendant expressly disclaims that it is providing consumer reports for employment purposes, yet it knowingly supplies such reports to third parties that it knows uses the reports for employment purposes.

85.     Given this lack of notice, if consumers are lucky enough to learn that Defendant reported information about them, Defendant freezes them out when these consumers ask for their file disclosures.

86.     Instead of revealing the information it possesses, the sources, and to whom it has provided such information, Defendant simply ignores the request for information by denying the consumer report it generated is, in fact, one governed by the FCRA.

87.     This is problematic not just because it fails to meet the most-basic disclosure requirement the FCRA demands, but Defendant does not let consumers

know where it obtained the information it is reporting, or to whom Defendant gave it.

88.     Adding to the difficulty, wading through Defendant's litany of disclaimers that the information may not be accurate and the FCRA does not govern it, nowhere does Defendant even commit that the information it provides consumers is also information it provided to someone else.

89.     Such secrecy and misdirection are the antithesis of the transparency Congress anticipated when it enacted Section 1681g.

## CLASS ACTION ALLEGATIONS

### PLAINTIFF'S PROPOSED CLASSES

90.     Plaintiff brings this action on a class basis, with initial class definitions that follow.

91.     ***The § 1681g Disclosure Class.*** Plaintiff brings this action for himself and on behalf of the following "Section 1681g Disclosure Class," of which he is a member, initially defined as:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) who requested their full file disclosure from Defendant on or after the date two years before the filing of this lawsuit.

92.     ***The § 1681k(a)(1) Notice Class.*** Pursuant to Federal Rule of Civil Procedure 23 and 15 U.S.C. § 1681k, Plaintiff brings this action for himself and on

behalf of the following "Section 1681k Notice Class," of which he is a member, initially defined as:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a) who were the subject of the sale by Defendant of one or more criminal public records after two years before the filing of this lawsuit, (b) sold to a consumer reporting agency that resold the data to an end-user for an employment purpose, (c) or sold directly to an end user (other than the consumer) for an employment purpose, (d) to whom Defendant did not place in the United States mail postage pre-paid, on the day it furnished the report, a written notice to the subject consumer that it was furnishing the report and containing the name of the person that was to receive the report.

93.     ***The § 1681c(a) Obsolete Information Class.*** Plaintiff brings this class action on behalf of the following "Obsolete Information Class," of which she is a member, initially defined as:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States), (a) who were the subject of the sale by Defendant of any records to a third party (b) on or after two years before the filing of this lawsuit, (c) containing any adverse item of information other than a conviction of a crime, antedating the report by more than seven years.

94.     **Numerosity.**   Upon information and belief, the putative Classes exceed 40 members each.  Information concerning the exact size of the putative Class is within the exclusive possession of Defendant or its agents. The Class

members are so numerous and geographically dispersed that joinder of all members is impracticable.

95.     **Typicality.** Plaintiff's claims are typical of the claims of the other Class members as all Class members were similarly affected by Defendant's unlawful conduct in violation of the FCRA.

96.     **Adequacy.** Plaintiff will fairly and adequately protect the interest of the Class Members and have retained counsel competent and experienced in complex litigation. Plaintiff is a member of the Classes and does not have any interests antagonistic to or in conflict with the members of the Classes. Plaintiff's claims are the same as those of the Classes, which all arise from the same operative facts and are based upon the same legal theories.

97.     **Commonality.** Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including by example only and without limitation:

a.      Whether Defendant's uniform failure to provide timely notice that it was providing consumer reports for employment purposes containing a negative public record violated the FCRA;

b.      Whether Defendant maintains strict procedures designed to insure complete and up-to-date reports when it never obtains a complete and up-to-date court record, therefore § 168lk(a)(2) is inapplicable;

d.     Whether Defendant supplied consumer reports that contain non-conviction criminal history that antedated the report by more than seven years;

e.     Whether Defendant supplied employment-purposed consumer reports to users without a permissible purpose to do so in violation of 15 U.S.C. § 1681e(a);

f.     Whether Defendant's full file disclosures meet the requirements of 15 U.S.C. § 1681g;

g.     Whether Defendant's violations of the FCRA were "willful."

98.     **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because the membership of the Classes is so numerous and involves claims that, taken individually, may not justify the costs and effort of bringing suit.

99.     Further, the prosecution of several actions by individual members of the Classes would create a risk of varying adjudications with respect to members of the Classes, as well as create inconsistent standards of conduct for those opposing the Classes. Additionally, individual actions by members of the Classes may be dispositive of the interests of other members not parties to the adjudication of the claim, which would impair or impede the ability of those individuals to protect their interests.

100.   **Predominance.**   The claims of the class members, including the common questions of law and fact, predominate over any individual facts or legal issues present in the class claims.  There are no factual or legal issues that differ among the putative class members. The principal issues are: (a) whether Defendant sold a consumer report to third parties about Plaintiff and each putative class member for a permissible purpose; (b) whether Defendant had reasonable procedures in place to comply with the FCRA; (c) whether Defendant required that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose; (d) whether Defendant made a reasonable effort to verify the uses certified by Pinkerton prior to furnishing such user a consumer report; (e) whether and how Defendant maintained strict procedures to ensure that the criminal public records were complete and up-to-date; (f) whether Defendant sold consumer reports that contained obsolete information to third parties; (g) whether Defendant received advice, guidance, counsel, or legal advice that it was not a consumer reporting agency and/or that the reports it compiled and sold to third parties were consumer reports; (h) whether Defendant delivers compliant full-file disclosures; and (i) whether Defendant acted willfully.  Defendants' violations were negligent, reckless, knowing or intentionally committed in conscious disregard for the rights of the Plaintiff and putative Class Members.

101.    The members of the classes can be identified and ascertained by using the Defendant's records, records maintained by its customers and the end-users of consumer reports furnished by Defendant to its clients.

### COUNT ONE – CLASS CLAIM
### *Incomplete Disclosures – Violation of 15 U.S.C. § 1681g(a)*

102.    Plaintiff reiterates each of the allegations in the preceding paragraphs as if set forth herein at length.

103.    Plaintiff requested from Defendant her full file disclosure as permitted by the FCRA.

104.    Section 1681g required Defendant to respond with all of the information it possessed about Plaintiff, including the sources of such information, as well as a list of those third parties to whom Defendant furnished information.

105.    Defendant instead provided a litany of excuses as to why it supposedly did not have to comply with Plaintiff's requests, as well as a non-compliant, inaccurate criminal history search about Plaintiff.

106.    Defendant violated 15 U.S.C. § 1681g(a) by refusing to provide all of the information it possessed about Plaintiff, as required by Section 1681g(a).

107.    Defendant knew that the FCRA required it to provide a fulsome disclosure, including all the information it possessed about Plaintiff at the time of her request, the sources of that information, and a list of the entities—like Osa—to whom it had provided information about Plaintiff.

108.    Despite this knowledge and the easy-to interpret and follow statutory mandates, Defendant failed to meet its statutory duties to provide valid disclosures.

109.    As a result, Plaintiff was deprived of information to which is statutorily entitled, and was also prevented from being able to learn the sources of information so that she could potentially correct inaccuracies Defendant was perpetuating about her, as well as being kept in the dark as to whom Defendant had provided information about her.

110.    As to Plaintiff and the "Disclosure Class," Defendant regularly fails to provide fulsome file disclosures in violation of 15 U.S.C. § 1681g(a).

111.    As a result of the failure to provide compliant disclosures, Plaintiff and the "1681g Disclosure Class" were subjected to the deprivation of information to which Congress has deemed them entitled to upon a simple request.

112.    The value of a full file disclosure is significant and easily greater than $12.50.

113.    The denial of the full information required in such disclosure caused actual monetary harm in some amount at or over $12.50.

114.    The conduct, action, and inaction of Defendant was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

115.    Plaintiff and other members of the putative "1681g Disclosure Class" are entitled to recover costs and attorneys' fees as well as appropriate equitable relief from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

## COUNT TWO – CLASS CLAIM
### *Failure To Provide "At The Time" Notice – Violation of 15 U.S.C. § 1681k(a)(1)*

116.    Plaintiff incorporates by reference those paragraphs set out above as though fully set forth herein.

117.    The consumer report of Plaintiff and of each member of the "1681k Notice Class" was furnished for an employment purpose and contained one or more public records of the type that may adversely affect an employer's hiring decision.

118.    As to Plaintiff and the "1681k Notice Class," Defendant uniformly fails to comply with the rigors of FCRA § 1681k(a)(2) and therefore must necessarily rely on its compliance with § 1681k(a)(1).

119.    On information and belief, Plaintiff alleges that Defendant obtains public records, including criminal records from a third-party consumer reporting agency or vendor, and does not attempt to obtain this information through its own courthouse searches.

120.    On information and belief, Plaintiff alleges that as to the "1681k Notice Class," Defendant did not send such class members a notice pursuant to 15 U.S.C. § 1681k(a)(1).

121.    On information and belief, Plaintiff alleges that as to the "1681k Notice Class," Defendant did not itself or by its own court researchers or vendors attempt to verify the completeness or current status of the public records pursuant to 15 U.S.C. § 1681k(a)(2), within 30 days before it furnishes and sells these records in one of its reports.

122.    Defendant's failure to timely provide the required FCRA notices to the Plaintiff and other members of the "1681k Notice Class" violated 15 U.S.C. § 1681k(a)(1).

123.    The conduct, action, and inaction of Defendant was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

124.    Plaintiff and other members of the putative "1681k Notice Class" are entitled to recover costs and attorneys' fees as well as appropriate equitable relief from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

## COUNT THREE – CLASS CLAIM
### *Obsolete Information – Violation of 15 U.S.C. § 1681c(a)*

125.    Plaintiff reiterates each of the allegations in the preceding paragraphs as if set forth herein at length.

126.   The consumer report about Plaintiff reported numerous obsolete criminal arrest records that not only did not belong to her at all, but which antedated the report by more than seven years.

127.   Defendant also included obsolete information – for instance, records of arrests antedating the report by more than seven years – in the consumer reports it sold to third parties about the putative class members.

128.   Defendant violated 15 U.S.C. § 1681c(a)(2) by reporting arrest information that antedated the report by more than seven years.

129.   Defendant knew that it was forbidden by the FCRA to publish criminal arrest information in a consumer report that is older than seven years, but despite this knowledge published the obsolete information anyway.

130.   As to the Named Plaintiff and the "Obsolete Information Class," Defendant regularly violates the prohibition on publishing obsolete information in violation of 15 U.S.C. § 1681c(a)(2).

131.   As a result of the publication of obsolete information, the Named Plaintiff and the "Obsolete Information Class" were subjected to the publication of information that was deemed obsolete by Congress and specially excluded from information permitted in consumer reports.

132.   The conduct, action, and inaction of Defendant was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

133.   Plaintiff and other members of the putative "Obsolete Information Class" are entitled to recover costs and attorneys' fees as well as appropriate equitable relief from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

## COUNT FOUR – INDIVIDUAL CLAIM AGAINST DEFENDANT
### *Failure To Ensure Maximum Possible Accuracy – Violation of 15 U.S.C. § 1681e(b)*

134.   Plaintiff reiterates each of the allegations in the preceding paragraphs as if set forth at length herein.

135.   The consumer report about Plaintiff inaccurately reported numerous erroneous, obsolete and expunged criminal records in a way that made it appear that the consumer had an active criminal record upon which an employment decision might be made, and indeed was made.

136.   The report is rife with inaccuracies and errors. In fact, many of the entries in the report, including allegations of theft, simply do not belong to Plaintiff.

137.   By way of example, the report states that on August 11, 2007 Ms. Parker was charged with a "Misdemeanor for Retail Theft," found guilty, and sentenced to 15 days in the county jail. But Plaintiff has never been arrested for theft, never been convicted of a crime, nor has she ever been to jail.

138.   Worse still, the report erroneously alleges Plaintiff was charged with the second-degree felony for aggravated battery on a pregnant female in

Hillsborough County, Florida, and even includes a mugshot. But Plaintiff has never been charged with a felony ***and the photograph in the mugshot is not Plaintiff***, but another person entirely.

139.   The report is full of similar errors wrongly attributing to Plaintiff crimes she simply did not commit, including an additional felony charge for passing altered or forged instruments and larceny, an erroneous charge for misdemeanor larceny, and another misdemeanor charge for allegedly violating a pre-trial release. Simply put, these criminal charges belonged to someone else and they were costing Plaintiff her job with Stellar.

140.   Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding Plaintiff.

141.   As a result of this conduct by Defendant, Plaintiff suffered actual damages, including without limitation, by example only and as described herein on her behalf by Counsel: loss of employment, damage to reputation, embarrassment, humiliation, and other emotional and mental distress.

142.   Defendant's violations of 15 U.S.C. § 1681e(b) were reckless or willful, rendering Defendant liable pursuant to 15 U.S.C. § 1681n.   In the alternative, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

143.    Plaintiff is entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorneys' fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

**WHEREFORE**, as to the FCRA class claims in Counts I – IV, Plaintiff and the putative Classes respectfully pray for the following relief:

> A.    An order certifying the proposed classes herein pursuant to FED. R. CIV. P. 23 and appointing the undersigned counsel to represent them;

> B.    The creation of a common fund available to provide notice of and remedy Defendant's unlawful conduct;

> C.    That judgment be entered for Plaintiff individually for actual and/or statutory damages and punitive damages against Defendant for violation of 15 U.S.C. § 1681e(b) and pursuant to 15 U.S.C. §§ 1681n and 1681o;

> D.    Statutory and punitive damages for all class claims;

> E.    Attorneys' fees, expenses and costs; and

> F.    Pre-judgment and post-judgment interest as provided by law.

## COUNT FIVE – INDIVIDUAL CLAIM AGAINST DEFENDANT
### *Defamation Per Se (Alternative Claim)*

139.    Plaintiff reiterates each of the allegations in the preceding paragraphs as if set forth at length herein.

140.    Plaintiff expects that Defendant will defend this case in part by arguing that the FCRA does not apply to it. Plaintiff therefore asserts alternative claims of defamation and defamation *per se*.

141.    Defendant published to Plaintiff's prospective employer a report

about Plaintiff that stated Plaintiff had a conviction for theft. That was a statement of fact.

142.   When Defendant made the statements to the employer it either knew it was false or recklessly failed to determine the statement's truth.

143.   Stating to a third party that someone is a convicted thief constitutes defamation *per se* under Florida law.

144.   Such a statement also subjected Plaintiff to hatred, distrust, ridicule, contempt, or disgrace as to the employer. This result is likewise defamation *per se* under Florida law.

145.   The statements in the report about Plaintiff were false, and the employer (Stellar) was capable of understanding the meaning of the statements.

146.   At the time Defendant made the statements to the employer (Stellar), it knew the statements were false or was at least negligent in attributing to Plaintiff the criminal history of a stranger.

147.   The statements were defamatory, as they tended to injure at least Plaintiff's reputation in the eyes of the community, or at least in the eyes of Plaintiff's potential employer.

148.   As a result of Defendant's stating to Plaintiff's potential employer that Plaintiff was a convicted thief, Plaintiff lost a job opportunity and the pay that came with the job.

149.    Defendant's statements to the employer (Stellar) injured Plaintiff's reputation in the community, as well as causing her to suffer economic damages such as the loss of a salary and benefits.

150.    Plaintiff also suffered emotional harm such as loss of sleep, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

151.    Because Defendant made the false, defamatory statements knowing they were false or recklessly failing to check their accuracy, Plaintiff is entitled to punitive damages under Florida law.

### COUNT SIX – INDIVIDUAL CLAIM AGAINST DEFENDANT
### *Defamation (Alternative Claim)*

152.    Plaintiff reiterates each of the allegations in the preceding paragraphs as if set forth at length herein.

153.    Defendant published to Plaintiff's prospective employer (Stellar) a report about Plaintiff that stated Plaintiff had a conviction for theft.

154.    The statements in the report about Plaintiff were false, and the employer (Stellar) was capable of understanding the meaning of the statements.

155.    The statements that Plaintiff was a convicted thief were statements of fact.

156.    At the time Defendant made the statements to the landlord, it knew the statements were false, or recklessly failed to verify them. Alternatively, Defendant was at least negligent in attributing to Plaintiff the criminal history of a stranger.

33

157.   The statements were defamatory, as they tended to injure at least Plaintiff's reputation in the eyes of the community, or at least in the eyes of Plaintiff's potential employer (Stellar).

158.   As a result of Defendant's stating to Plaintiff's potential employer (Stellar) that Plaintiff was a convicted thief, Plaintiff lost a job and the salary and benefits that came with it.

159.   Defendant's statements to the employer (Stellar) injured Plaintiff's reputation in the community, as well as causing her to suffer economic damages such as lost pay and benefits.

160.   Plaintiff also suffered emotional harm such as loss of sleep, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

161.   Because Defendant made the false, defamatory statements knowing they were false or recklessly failing to check their accuracy, Plaintiff is entitled to punitive damages under Florida law.

## **<u>PRAYER FOR RELIEF</u>**

**WHEREFORE**, as to the individual claims in Counts V – VI, the Plaintiff demands judgment for actual and statutory damages against the Defendant; for his attorneys' fees and costs; for prejudgment and post-judgment interest at the

judgment rate; equitable relief allowed by law; and any such other relief the Court

deems just and proper.[5]

**TRIAL BY JURY IS DEMANDED**

Dated this 13th day of October, 2022.

Respectfully submitted,

*/s/ Brandon J. Hill*

**BRANDON HILL**
Florida Bar No. 37061
**LUIS A. CABASSA**
Florida Bar No. 0053643
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, FL 33602
Telephone: (813) 224-0431
Facsimile:  (813) 229-8719
Email: bhill@wfclaw.com
Email: lcabassa@wfclaw.com
Email: gnichols@wfclaw.com

**CRAIG C. MARCHIANDO**
Florida Bar No. 1010769
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile:  (757) 930-3662
Email:      craig@clalegal.com

***Attorneys for Plaintiff***

---

[5] Plaintiff will, at the appropriate time, also seek leave to add a punitive damages claim but is not yet doing so.

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 13th day of October, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of this filing to all counsel of record.


*/s/Brandon J. Hill*
**BRANDON J. HILL**

36